et al. Oral argument not to exceed 15 minutes per side. Mr. Boudai for the plaintiff, appellant. Good morning, your honors. I've requested two minutes of reserve time. I may. Stephen Boudai appearing on behalf of the plaintiff, Mario Simmons. What we have in this case is something that has unfortunately become more and more illuminated recently in the United States, that is misconduct by the police. We don't have a video of this incident. That however does not make it less likely to have occurred. What we do have is something just as powerful and just as objective as a video. We have a 45-year-old man with the objective fact that he had herniated discs caused by trauma on June 29, 2010, with no prior history of any physical ailments, who was a perfectly normal person with no prior criminal record, who was a high-low driver, lived with his fiancée and their 13-year-old son. After the assault by the defendants, we have a man with multiple herniated discs in his cervical spine requiring immediate spinal fusion surgery to prevent him from becoming paralyzed. The herniated disc did not simply appear out of thin air. There were two uncontroverted medical doctors who testified at trial. Mr. Simmons' treating neurosurgeon, Dr. Mahmoud. Yes. I don't think there's any real controversy that he has some serious physical injury. But if there's no liability, what consequence are the damages? I think that the damages, the injury goes directly to the liability. The defendants are claiming that Mr. Simmons, for example, face never struck the cement. That they never did any of the things to him that he claims that he did. The injuries clearly show that what they testified to was inaccurate. There are photographs, the booking photograph of Mr. Simmons that shows abrasions to his face. Now the abrasions to his face were also testified to by the emergency room doctor who observed blood, dried blood on his face. There was the other doctor at the hospital where he went after he was released from jail who testified that there were abrasions and scrapes on his face consistent with being slammed to the ground. But the officers are testifying. So your theory is that the nature of the injuries reflect the way the occurrence took place? That's correct. Inconsistent with the police officer's description. That's right. And so it's our position that based on that information and the fact that the doctors both testified that the injuries occurred as the result of trauma and that they were, the injuries were therefore the result of the physical altercation caused by the defendant police officers. The uncontroverted testimony shows that there was this trauma and as I've indicated, we believe that the jury ignored the great weight of the evidence as follows. Number one, Mr. Simmons uncontroverted testimony that he had no prior issues with his physical condition prior to the assault by the defendants, that he was able to live every day and work and play and do everything that he could. That doesn't go to your theory that the reason you want to talk about damages is to show that it's inconsistent with the occurrence. Well, I think it goes directly to that. He was a perfectly normal person before this incident and after the incident he was no longer a perfectly normal person with herniated discs in his back and requiring spinal surgery. And those things don't just happen by nothing. They don't just happen by him walking down the street. They don't just happen by a police officer who says he did everything according to the book and arrested him with no physical altercation. You didn't say there was no physical altercation. They described the altercation differently than your client. That's true. They say that he caused it himself because he was kicking and shoving and didn't follow the commands. And the jury heard these conflicting stories and as triars of fact determined that it occurred presumably the way the police officer said it. But they deny that he was thrown to the ground. They deny that his face hit the ground. They deny all of that. The altercation that they claim occurred happened at the police car. When they were trying to put him in the police car they claim that he stiffened up his body and that he wouldn't allow them to put him into the police car which is when they had to use pepper spray to get him to comply and that he did. Now that wouldn't cause herniated discs in his back getting sprayed by pepper spray. Didn't Officer Napier said that she had to take him down? She did testify that she took him down. And the jury had to decide whether that was an appropriate response to your client's response to their instructions. Well she said that she took him down and but that she didn't testify that at that point that he was resisting in any way. The resisting that she testified to occurred at her vehicle when she had to pepper spray him. But why would she take him quote take him down if he wasn't resisting? Usually she wanted to handcuff him and she wanted to get the handcuffs on him. At that point there hadn't been a determination that he had done anything wrong. In fact he was never charged with a crime. He was released the next day without any criminal charges whatsoever. And at the point that she decided she wanted to arrest him she testified that he wasn't under arrest but he wasn't free to leave. So but but her position was at that time was she wanted to arrest him and handcuff him and place him in the back of her car. And that's why she did that. But she but he was he was she says that he refused the command to let her handcuff him. That's why she took him. You don't normally say you're under arrest and knock you down right? No I don't think that's normal but I know that that happened. But at least her story is that the reason she took him to the ground was that he refused her commands to let her handcuff him. Isn't that her testimony? No I don't think that's exactly her testimony. I think that she took him to the ground. He was attempting to comply with her commands to get down on the ground. He was slowly moving towards the ground. He had his hands up in the air and he was moving towards the ground. He testified that he didn't want to put his hand. His testimony? What's her testimony? Because the jury I mean you you've made in a sense you're making an argument let's say here it's for new trial but you're acting as though it's an argument for summary judgment. That is that there's no question that these are the facts and the officers testified to the contrary before the jury. Not exactly contrary. She testified that he was moving towards getting down to the ground when apparently she felt that it wasn't fast enough and that's when she decided to handcuff him and put him to the ground. There's a whole dispute about what Napier and what Mahoy testified to about how that whole process took place. Isn't that the point? There was a dispute. It was submitted to the jury and the jury as a fact finder resolved those disputes. You may have you have a fairly compelling story to tell to the jury but they chose to take the other version of the story. It seems to me that's and that's why trials are all about. That's what trials are all about but that's why we're saying that there was so much uncontroverted testimony that the jury ignored including the doctors including the injury and you know the fact that the the doctors that this type of injury does not occur without trauma. Yeah I sorry I got you too off on track but you've raised seven different issues. Yes. Pick the one you think next to the one we just discussed that's the best in your favor. Well I think that I think that the the greater weight of the evidence is a strong argument. All right so take that taking that one away. I think that the next argument has to do with the failure of the trial court to grant a mistrial for Mr. Mahoy's behavior during the time of the trial. What he did was well there were two things about Mahoy but let me go back to that. You're talking about his blurting out. Yes that the one of the witnesses was incarcerated and the trial judge severely admonished the defendant outside the hearing of the jury as to what it had what he had done. The judge placed his very detailed observations on the record of the jury when Mr. Mahoy made that statement and the question really is why would Mr. Mahoy make that statement and the answer is obvious. He was trying to reduce the credibility of the by increasing his own credibility. That's correct and I think that the trial judge felt the same way. He was very upset about that. The trial judge was very upset I'm sure you've seen the quotes and maybe even read the transcript about. That was officer former officer Gladden. Yes. But even though the district judge was very upset about that he then thought about as well Mr. Gladden was a peripheral at best witness there wasn't much he could add he didn't even really couldn't even tell what happened in the incident. So he came to the conclusion that district judge that it was non-prejudicial. Well that's right and that's what we're saying was incorrect and that our position is that his initial inclination finding that that was a basis for a mistrial which is what the trial judge said at the time and what he invited us to ask for and then denied was his was correct the correct inclination at that time and we think that he should have so you have to show that he has abused his discretion in saying it was not prejudicial even though it was inappropriate it was not prejudicial. Right and it's our position that it was prejudicial that that the observation of the trial judge who said that he observed the faces of the jurors even in their surprise when that was blurted out I think that affected the entire jury panel at that time making it such that they didn't believe that witness any of that testimony and perhaps even any of the plaintiff's testimony at that. What was so important about Mr. Gladden's testimony? Well first of all there was testimony that was kept out and that's the other part of. That's a different issue I didn't hear the jury didn't hear that so that's a bell not rung. Right. What did Gladden say that was so important to your client's case? Gladden testified about the way in which police officers handle arrest. I'll have to go back and review. He wasn't at the incident was he? No he was not at the incident at this particular incident. The other point that we made with regard to Mr. Mahoy is the Gladden's testimony that wasn't read to the jury and we think that that was incorrectly kept out of the trial and we think that the judge misunderstood plaintiff's argument on that issue and what we were not trying to show is that his past behavior was consistent Mr. Mahoy's past behavior was consistent with this instance because that would be impermissible but it was plaintiff's position that the present behavior of the defendant was not caused by mistake but intentionally by the defendant. In other words the defendant's claim that the plaintiff was taken down to the ground in a deliberate or careful manner and any injury to him would have been by mistake and are disproved by the witness Gladden who testified that the manner in which Mahoy always conducted himself was intentionally aggressive. Remember that Mahoy was a hand-to-hand combat specialist trained in close quarters combat style defense had a black belt in multiple disciplines of Mai Tai, Brazilian Jiu-Jitsu, Israeli Krav Maga and there's no way that he was acting at anything other than an intentional way and that the purpose of the testimony of Mr. Gladden was to show. There was no contention was there that the officer did this by mistake? Well but the officer testified that he always consistent with the whole the officer testified that he always follows the law he always does everything pursuant to policy he always does everything in the way that a model police officer would handle it well this testimony would have shown that he doesn't do that and that he his his intent during the course of arrests is to act aggressively. But that proves I think the district judge's point that it really was to show that he acted in conformance with this aggressiveness which is prohibited by 404B. Right but I don't think that it shows that I think that it shows under 404 that the exception is that if the person you're trying to show that the person acted intentionally and without mistake or accident it's permissible and that is a permitted part of of the rule. Can you you just indicated I think that Mr. Mahoy testified that he always did everything by the book essentially. Yes. And I think my recollection was that the district court didn't think that that was what Mr. Mahoy actually said. Can you give me a record site to where I would find that that was his testimony as opposed to just a general testimony about the way the police officers operate? Yes I think I have that here if I can just have a moment to find it. Well I'll tell you what you you can find it while you're waiting for your rebuttal time. Great thank you. Thank you counsel. I may have pleased the court your honors. Reginald Dozier appearing on behalf of the appellees Diana Napier, Musiah Mahoy and David Villarro. I will start off by addressing the points that the appellant's counsel made. First of all he the standard for granting a new trial as the judges have aptly pointed out this is a matter that comes to you after an eight-day trial where the jury as the finder of fact found the fact and the standard is that no reasonable jury could reach the verdict that's being challenged. Mr. Simmons has not even asserted that the jury was unreasonable in this matter because the jury was not. The jury listened to the facts, the jury and the jury made a came to a decision and reached a verdict that was not liked by the plaintiff however it was a sound and reasoned verdict. In addition to the arguments that we've made in our brief we point out that as Judge Huck pointed out to appellate's attorney that what he has argued in his brief and what he argued with you this morning was basically he made arguments about the injuries and the injuries are part of the damages and they did not he did not make an argument or did not make a showing of the first part the liability section. Basically they're not has not and then this point this touches two points appellate's have argued strongly that the injuries about the injuries and whatnot and the appellee's never made a strong argument that the injuries came from something other than his interaction and contact with the officers on the in question. There's never been any argument made by my clients that the injuries that Mr. Simmons presented with were as a result of a mistake or as a result of an accident. This is something that's been asserted by the plaintiff appellate here and not really asserted by the... Don't you argue to some extent that some of these injuries might have happened in the time between the incident we're talking about and the time the doctors observed them? Is there an implication in some of your briefing of that sort you say that doctors said well I don't have any records in between that sort of thing? Well we don't we we point out that that's the case we also pointed out that there were some there was some medical history of back issues prior. Let's not look at the back let's look at the face in the sense that and help me if I'm not saying this exactly right that the officers say we never smashed his face against anything and the other side says there is medical evidence of his face being damaged pretty much contemporaneously. Is that a fair reading of the record? I think that would be a fair reading of the record but the thing of it is and you know that's something that I really wasn't going to argue but when I looked at you know the arguments made by the appellant here they keep talking about abrasions. I'm not a doctor and I don't even play one on TV. However when I see abrasions, abrasions are not as a result of somebody being smacked down. Abrasions are as a result of a rubbing on the concrete or whatnot. We don't know presumably the jury could evade that determination that either the abrasions weren't that bad or that okay the officers were wrong and they did put his face down but it was still justified. What a better line of argument. That's the line of argument but the other line of argument is there's nothing no no no no officer said that he wasn't placed on the ground and when someone is placed on the ground they are faced down and when your face is on the ground and you're moving around that's how abrasions come about because you're rubbing around on a hard surface. So it's they're not as a result of matter of fact you don't get abrasions from being smacked down on the ground you get abrasions from rubbing on a hard surface. Therefore and then also what plaintiffs took great pains to say in their brief is that the defendant Apalis did not present evidence from experts to refute his expert but one thing that you know struck me as I was going over and preparing for this hearing judge that wow he had to stand he had the burden of proof and he presented these particular experts and we cross-examined them and after we did that the jury made a sound decision regarding that. Then also he pointed out in his arguments that his other strong argument was the argument regarding officer former officer Gladden and officer Mahoy making the comment that officer Gladden was incarcerated and I will point out to the to the court that basically the transcript that would have been that was introduced was void of any incident of officer Mahoy doing any excessive force on any individual. In addition to that officer Gladden was not a lay witness because although I think the record reflects that he was somewhere present he didn't have any recollection whatsoever of this incident. So he couldn't testify to this because he didn't know anything about it and so if you're not a lay witness then the only other way that I'm that you can come in and testify is as an expert. He never was qualified as an expert he never presented a report so as the argument regarding the prejudice against this particular witness is really prejudice against a witness which there was no prejudice but if there was it's prejudice against a witness that shouldn't have testified in the first place. They had no knowledge of the not an expert witness so they shouldn't have testified and as has been pointed out here this morning they were at best peripheral to the matter. Basically also the plaintiff pointed out in his argument that there was an abuse of discretion by the court not allowing a use of not allowing the attorneys to conduct voir dire and basically the appellant did not object to the court not allowing he asked for certain questions to be asked but he didn't object to not being allowed to ask the questions himself and the other part of that is the fact of the matter is it's not like one side was able to ask questions in voir dire and the other side was not so this was evenly done and there was no prejudice by neither side being allowed. Also the appellant has talked about questions that he was not allowed to ask that he wanted to ask but in his brief here before this court and in his brief for a new trial he's failed to identify a single question that he proposed to be asked that wasn't asked. That would have been something simple for him to do because the questions were all typed out but he didn't ask he's waived that and again it was even across the board therefore this matter should not be overturned based on that particular issue. Also didn't the plaintiff ask for a question dealing with the jurors opinion about police officers? Wasn't there something to that effect? He your honor he probably did but as I'm pointing out now he did not list any of the questions any of the specific questions that he asked the judge to ask either in his brief for a new trial his brief as appellant brief here or his reply brief here therefore what he's asking you as the judges on the court of is just say well you should have been allowed to ask all of the questions that you wanted to ask and we don't know which questions those are that you're saying that you were prejudiced because you were not allowed to ask it but that was error on the part of the judge and it should be overturned based on that and that's simply it calls for wild speculation and that's that shouldn't be allowed here your honor. With regard to Gladden your adversary indicated that there was a lot of back and forth outside the presence of the jury. Was the jury admonished as to the the evil of Mahoy's blurting out? Yes your honor as a matter of fact immediately the judge told the told Mr. Mahoy or Officer Mahoy that he was out of line by doing what he did he told the jury that that testimony should not have been allowed to come in and he told them not to matter of fact he said you didn't hear that and and I it as as time goes on your honor sometimes some things are not quite as clear but if I'm not mistaken I think later on after there was argument about the issue where plaintiff's counsel asked for the for a mistrial or whatnot there were additional instructions to the jury regarding the testimony of Officer Mahoy as it pertained to Officer Gladden. And also plaintiff has said plaintiff appellate has said in their brief they've they went through great pains to try to introduce character evidence that shouldn't that would have violated federal rule of evidence 404. Basically that has been pointed out the prohibited for the purposes of proving that the person acted in accordance with that character on a particular occasion but try as he did plaintiff tried to get around that and came up with many different points as we pointed out early earlier there's been no argument on the part of the defendant appellees that this the any injuries that cap happened to the plaintiff were as a result of any accident or mistake. He tried that and basically the court did not abuse this discretion by not allowing that evidence in. Basically there was no reason for the admission of the evidence also I'll point out that there's nothing in Officer Gladden's transcript that said that Mahoy was at any point conducted any excessive force. There is testimony that says that there was aggressiveness but also there was testimony that defendants weren't allowed to allow in because after the in a corrective measure attempt after Officer Mahoy made the statement defendants were instructed not to attempt to bring in any additional information from Gladden's testimony transcript. We would have brought in after that statement so the record is clear in response to Judge Fouchelor's question that transcript at page 1375 76 the question was asked and so why doesn't this one stand out regarding to the incident in question and Mahoy said it doesn't stand out because of the reason being everything was followed to procedure that day and every time we make a contact with citizens that was the statement correct? That's a statement if I misunderstood Judge Boggs question. Maybe I did but that was one of the open issues and I think the argument was that that opened the door to allow that test the 404B testimony come in. Yes. The trial judge decided based on his exercise discretion under 403 not to allow it in. Yes. A lot of reasons not the least of which were there some evidentiary issues about double hearsay not a specific incident but just a general statement. Yes your honor and also to that point again that's kind of in an argument to say that that opened the door that takes it out of context because what was happening in that exchange was Officer Mahoy was acknowledging that a lot outside of his reports he didn't remember and being cross-examined the question was well why don't you remember these things specifically and this was a routine arrest and that's basically what he was indicating however. He tried to inject you know he did say every time we make contact with citizens we follow procedure he did say that. Yeah but again and so he that's why he assumed that he had followed procedures in that particular instance in an instance where he didn't have a specific independent recall of what took place but he knew that as an officer he did what he was supposed to do and that was only in response to a question which was a question in an attempt to impeach him by saying well why don't you remember because that was one arrest out of the many that I make on a regular basis and I could have stopped right there and said this is just one of many arrests but he went on and said and we always follow procedure. He's not an attorney judge. Anyway the judge judge's exercise of discretion I guess for other reasons as well. I think your time's expired. Thank you Judge. Mr. Budai you have two minutes for rebuttal. Thank you Judge Huck did point out the point that I was going to make I think in response to Judge Batchelder's question where in the transcript did it say that Mr. Mahoy does everything according to the policies and procedures and that was exactly what Judge Huck pointed out where he said it doesn't stand out because of the reason being everything was followed to procedure that day and every time that we make contact with citizens and the judge noted that and in his statement said that he was concerned because Mahoy testified that the Wayne State Police Department does the right thing in every arrest. That was document 57 page 1413 and Mr. Mahoy's statement was at page 1374 75 in doc 57. The other thing. The judge found that I was saying the reason he kept out among other reasons including some evidentiary issues about double hearsay and just a general statement as opposed to a specific incident he did say that it would deter the jury's consideration from what I believe were the facts that what facts actually were that were on trial that particular day and so. Yes but the point was that the the testimony that Mr. Gladden would have been allowed to give if it had been allowed was that he wasn't acting in conformance with his policy of treating people pursuant to the policy all the time and the 404 says that even though evidence of other wrong acts are not permitted it may however be admissible for other purposes such as proof of motive opportunity intent preparation plan knowledge and identity or absence of mistake or accident and that's the portion of the rule that we were trying to get the information in under. One other quick thing I want to make is I don't much time the judge asked about a question about whether or not there was something in the appellee's brief regarding a claim that the injury occurred between the incident in the time that the doctor saw him and that is an incorrect statement they made that statement in their brief that the Mr. Simmons didn't see the doctors for two weeks he saw the doctor the day he was released from jail and at that visit the medical records. One day later is that right? Yeah the day he was released from jail yes so he was arrested like around midnight he was released from jail in the afternoon of the following day that same day within an hour he was at Henry Ford Hospital in Detroit that day they made the diagnosis that he had the herniated discs in his neck so it wasn't two weeks later so I don't know where that came from but it was an incorrect statement in their brief. Lastly I just want to point out that the jury poll issue is one of the other issues that I thought was important and that the we've studied that one pretty well. Okay very good thank you. This case will be submitted clerk may call the next case.